## BANK OF RUTLAND vs. REUBEN R. THRALL.

A creditor, having collateral remedies, may pursue both until he obtain actual satisfaction.

If the goods of the principal are seized and sold on execution, and the sheriff is in default in not paying over the avails, and the creditor obtain judgment against him, this is no bar to a suit on the original security against a party.

This was an action on note, dated the 29th day of August, A. D. 1831, and signed by Thomas Hooker, Charles K. Williams and Reuben R. Thrall, for $1000, payable in three months from date. Plea, non-assumpsit—issue to the court.

On the trial of the cause, the defendant offered evidence tending to prove that Thomas Hooker was the principal debtor,

Rutland,
January,
1834.

Bank of Rutland
vs.
Thrall.

and Charles K. Williams and this defendant signed as surety for Hooker, which was known to the directors. That the directors suffered the note to remain unpaid from the twenty-ninth day of November, A. D. 1831, to the twenty-seventh day of February, A. D. 1832, without giving notice to the defendant, and that previous to that time Hooker failed. To this evidence the plaintiff's counsel objected, and the court rejected the evidence as irrelevant to the issue. The defendant then proved that on the 27th day of February, A. D. 1832, the defendant, Thrall, in the name of the plaintiffs, prayed out a writ of attachment on the same note in their favor against Thomas Hooker alone, and attached the personal property of Hooker;—that they obtained a judgment against Hooker, prayed out an execution on said judgment, and put it into the hands of Abel Page, constable of Rutland, who was the officer that made the attachment, with directions to levy said execution upon the property attached;—that Page levied said execution on the said personal property of the said Hooker, and posted and sold said property to the amount of $1004—that Page, the officer, had neglected to make his returns upon the execution, had been sued by the bank, and that the bank had recovered a judgment against Page for the whole amount of said execution; but there was no evidence tending to prove that the money had been paid over by Page to the bank. The plaintiffs then proved that there were four other attachments which were made out by said Thrall and served upon the same personal property, prior to the one in favor of the bank, on all of which executions had been delivered to the same officer, with directions to levy upon the same personal property. The defendant then proved that all of said executions had been stayed and taken back from the officer without being levied upon said property, with the exception of one in favor of William Hart against Thomas Hooker, John W. Hooker and this defendant, for $625 74, which was delivered to the officer on the 5th day of June, A. D. 1832, with directions to levy upon the same personal property. This execution was produced in court, and there were no returns of any proceedings on said execution. The plaintiffs then offered the two following receipts, which were read in evidence—to wit:

"Received of Abel Page two hundred and fifty dollars to answer on execution against T. Hooker and son in his hands, 3d October, 1832.          REUBEN R. THRALL.

" Received of Abel Page ninety-six dollars and eighteen cents of the money collected by him on executions against T. Hooker and son.                    REUBEN R. THRALL.
  · 18th Nov. 1832."

RUTLAND,
January,
1834."

Bank of Rutland
vs.
Thrall.

It further appeared, by the testimony of said Page, who was produced by said defendant, that near six hundred dollars of the money raised by the sale of said personal property was placed in the hands of said Thrall by said Page, and that said Page had requested said Thrall to admit the same to be applied to pay said execution upon said note of $1000, but that he refused, claiming that so much as necessary should be applied in payment of said execution in favor of said William Hart.

Upon this evidence the court decided that the defendant was liable for the full amount of the note, and ordered the judgment to be entered up accordingly. To this decision the defendant excepted, and the exceptions were allowed and certified.

After argument, the opinion of the court was delivered by

PHELPS, J.—It is very clear, that in order to sustain this defence, it becomes necessary to make out, either that the plaintiffs have received actual satisfaction of their claim, or that they have proceeded so far, or in such a manner, in the process of collection against Hooker, the principal debtor, as to be equitably estopped from pursuing the defendant in this action. The case is not very explicit as to the ultimate disposition of the money levied by the officer, Page. Whether the whole amount passed into the hands of the defendant, as the attorney of the several creditors, or only the sum of about six hundred dollars, does not distinctly appear. Whether we are to consider the two receipts, specified in the case, as a part of the sum testified to by Page, or as additional, is left to conjecture. Upon the last supposition, it would appear that nearly the whole of the amount levied, (perhaps all, if we allow for the officer's charges,) passed into the hands of the defendant. Now although payment to an attorney is, in general, payment in a legal sense to his employer, yet the effect, under the circumstances of the case, is very different. It appears that the defendant was entrusted, or at least permitted, by the plaintiffs to prosecute a suit in their name against Hooker on the note in question. The object of this proceeding was, beyond question, to obtain security for the defendant. Supposing then that it resulted in placing the amount in the hands of the defendant; how does the.

case differ from what it would have been, had Hooker voluntarily placed it there without suit? The object being effected, Thrall became the principal debtor, having the funds in his hands for the payment of the debt. How then could he shelter himself under his character of attorney? Had not the plaintiffs their election, to proceed against him either as maker of the note, or for money had and received?

Besides, it appears that he declined to have the money applied in payment of this debt. If he were justified in this, it must be upon the ground that the money was levied for another purpose; and if so, how has this debt become satisfied?

If a part only of the money was paid to him, these remarks will apply to what he did receive. As to the residue, supposing the sheriff in default, the plaintiffs had their remedy either against the sheriff or the defendant; and might pursue either until they obtained actual satisfaction. The remedies being collateral, a judgment against one would be no bar to a suit against the other. If the officer be insolvent, the remedy against him is no satisfaction; and whether responsible or not, chancery would give the defendant, in case he pays the debt, all the benefit of the plaintiff's remedy against him.

As to any supposed collusion between the plaintiffs and the officer, or any equitable considerations which would preclude them from pursuing the defendants, it is sufficient to say, that the whole proceeding appears to have been under the control and direction of the defendant. The judgment of the county court must therefore be affirmed.